**Robert RICE and John Parrott**

v.

**VAN WAGONER COMPANIES, INC., Aegon Insurance Company, Homestead Insurance Company of Philadelphia, and Underwriters at Lloyds, London.**

No. 2:89–0077.

United States District Court,
M.D. Tennessee,
Northeastern Division.

May 29, 1990.

Stephen L. Jennings, Crossville, Tenn., C.A. Cameron, Cookeville, Tenn., for plaintiffs.

Michael P. Mills of Brewer, Krause & Brooks, Nashville, Tenn., James Madewell, Cookeville, Tenn., Robert W. Fenet and Donald C. Brown, Lake Charles, La., for defendants.

## MEMORANDUM

MORTON, Senior District Judge.

This action arises out of an alleged breach of an insurance contract. After a fire which destroyed some of the plaintiffs' heavy equipment, the plaintiffs sought compensation for the property loss from the defendant insurers. The defendants denied the claim, however, on the ground that the fire was intentionally set and on the ground that the plaintiffs had fraudulently overvalued their property. The plaintiffs then filed this action when the defendants continued to deny the claim after the plaintiffs formally demanded payment and gave notice of intent to seek a "bad faith penalty." In addition to the value of the property damage, a 25 percent bad faith penalty, and interest, the plaintiffs also seek other damages allegedly caused by the defendants' refusal to cover the loss. These damages include lost profits, reimbursement of a fine, the cost of a lost lease, and compensation for mental anguish. The defendants now seek a partial summary judgment denying the plaintiffs' claim for these last four categories of damages.

■ To the extent that the plaintiffs may be claiming these damages under a tort theory, the court has no difficulty dismissing the claim. First, no tort of bad faith is available to the plaintiffs. *Chandler v. Prudential Insurance Company*, 715 S.W.2d 615, 619 (Tenn.Ct.App.1986). Second, a simple allegation of a bad faith refusal to pay an insurance claim is not an allegation of "conduct ... so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 622. Thus, the plaintiffs cannot advance their claim under the guise of the tort of outrageous conduct.[1] *Id. See also Dunbar v. Strimas*, 632 S.W.2d 558 (Tenn. Ct.App.1981). Since the plaintiffs have not even hinted at the possible applicability of any other tort theory, the court will therefore grant the defendants' motion to dismiss that portion of the complaint, if any, which seeks damages under a tort theory of action.

■ Likewise, the claim for mental anguish damages as a component of breach of contract damages can be disposed of easily under the authority of *Johnson v. Woman's Hospital*, 527 S.W.2d 133 (Tenn. Ct.App.1975).[2] As *Johnson* illustrates, there are exceptions to the general rule that damages for mental anguish are not recoverable in contract actions, but those exceptions do not apply to this case. There is no allegation of physical injury, and there is no allegation of any conduct, such as mishandling of a corpse, which the parties would naturally expect to result in emotional disturbances. Consequently, this portion of the plaintiffs' case must also be dismissed.

■ The claim for lost profits, lost lease, and fine reimbursement as consequential damages resulting from a breach of con-

---

1. The tort of outrageous conduct includes what is sometimes referred to as the tort of intentional infliction of emotional distress.

2. Actually, it appears that the plaintiffs have abandoned the claim for mental anguish damages, whether under theories of tort or contract law, since their response to the defendants' summary judgment motion is silent on the issue.

tract is more difficult. Consequential damages are generally recoverable in a breach of contract action as long as the parties reasonably contemplated at the time of execution that such consequences would naturally result from a breach of the contract. *See Tennessee Fertilizer Co. v. International Agricultural Corp.*, 146 Tenn. 451, 243 S.W. 81, 87 (1922). *See also Bush v. Cathey*, 598 S.W.2d 777, 783 (Tenn.Ct.App. 1979) ("Tennessee law allows recovery of all damages which are the normal and foreseeable result of the breach of a contract"); *Chambliss, Bahner & Crawford v. Luther*, 531 S.W.2d 108, 110 (Tenn.Ct.App.1975) ("The purpose of the remedy of damages is to put the party in as good a position as he would have been had the contract been completed, and accordingly a plaintiff may recover for the promised performance as well as consequential damages"). Assuming the existence of a factual dispute concerning whether the parties contemplated lost profits, loss of a lease, and a fine in the instance of the defendants' wrongful failure to pay a claim by the plaintiffs, the general rule as just stated would seem to preclude summary judgment in this case. The court concludes, however, that the Tennessee legislature's extensive regulation of insurance removes breaches of insurance contracts from within the reach of the general rule.

■ The critical statute is T.C.A. Sec. 56–7–105. It provides as follows:

The insurance companies ... doing an insurance ... business in this state, in all cases when a loss occurs and they refuse to pay the same within sixty days after a demand shall have been made by the holder of the policy ... on which the loss occurred, shall be liable to pay the holder of the policy ... in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional

expense, loss, or injury upon the holder of the policy ...; and provided further, that such additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss and injury thus entailed.

As discussed below, the court concludes that the plain language of this provision dictates a rejection of the present plaintiffs' claim for consequential damages. After reviewing scores of published and unpublished decisions citing the statute, the court recognizes some apparent conflict in the caselaw, but nevertheless still concludes that consequential damages are not available.

The primary problem with the plaintiffs' claim is that it ignores the explicit statutory language that limits the liability of the insurer "in *all* cases" for refusal to pay a claim "to the loss and interest thereon" plus "a sum not exceeding 25% on the loss." This language shows that the legislature clearly envisioned the insurer being liable for more than the property loss itself, but then also expressly limited that additional liability to 25 percent of the loss.[3] The plaintiffs' pursuit of consequential damages in addition to the property loss, interest, and a 25 percent penalty contravenes this clear language.

Notably, the language of the statute does not support the theory that the provision simply authorizes and limits an award in the nature of punitive damages while ignoring and not limiting consequential damages. Although courts repeatedly refer to the provision allowing up to an additional 25 percent damage award as the "bad faith penalty," the language clearly indicates that the additional liability is not simply a punitive penalty for bad faith. Rather, the provision establishes authority for recovery of additional damages caused by a breach of an insurance contract above and beyond the obvious recovery of the loss directly insured against. The importance of bad faith in this scheme comes

**3.** As discussed more below, the legislature also limited the circumstances under which that additional liability could be imposed. Again, this was an expression of legislative intent to limit an insured's ability to obtain damages for failure to pay an insurance claim.

from the fact that the authorization for additional damages is not triggered unless there is bad faith.[4]

The "consequential damages" component of the statutory provision can be seen in the requirement that before any of the additional liability of up to 25 percent of the property loss can be imposed, the insurer's failure to pay on the policy must have "inflicted additional expense, loss, or injury upon the holder of the policy." Moreover, the statute goes on to expressly provide that the additional liability "shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, or injury thus entailed." Thus, the legislature must have viewed the additional liability provision as a provision allowing for recovery of consequential damages. *See St. Paul Fire & Marine Insurance Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186, 1190 (1914) (purpose of penalty decision is to "indemnify the insured against delay interposed and defense made in bad faith"); *Edington v. Michigan Mutual Life Insurance Co.*, 134 Tenn. 188, 183 S.W. 728 (1915) (penalty discussed in terms of consequential damages); *Caspersen v. Academy Life Insurance Company of Denver Colorado*, 1990 WL 20119, 1990 Tenn.App.LEXIS 166 (Tenn.Ct.App. Mar. 7, 1990) (affirms no award of additional penalty under 56–7–105 when bad faith was present but failure to pay did not cause additional losses); *National Union Fire Insurance Co. v. Davis*, 54 Tenn.App. 255, 389 S.W.2d 941 (1965) (penalty measured by amount of attorney fee expended in bringing suit). At the same time, the legislature intended to limit that possible liability for consequential damages to 25 percent of the insured loss.

While a 25 percent limit may seem harsh in a case such as this if the plaintiffs' allegations of enormous consequential damages are true, such bright lines are certainly within the power of the legislature to enact. The plaintiff can at least be grateful that the legislature's act opens the door to a wider recovery than that available under *Loudon v. Taxing District*, 104 U.S. 771, 26 L.Ed. 923 (1881). In *Loudon*, a Tennessee case, the United States Supreme Court limited "damages for delay in the payment of money owing upon contract" to "the allowance of interest, which ... [t]he law assumes ... is the measure of all such damages" "for withholding money that is due." *Id.* 104 U.S. at 774.

This court's construction of the statute as discussed above is supported by *Chandler v. Prudential Insurance Company*, 715 S.W.2d 615 (Tenn.Ct.App.1986). In the context of rejecting an insured's claim based on the alleged "tort of bad faith," the *Chandler* court concluded that section 56–7–105 provided the *exclusive remedy* for an insured's claim arising out of an insurer's bad faith refusal to pay a claim. *See also Berry v. Home Beneficial Life Insurance Co.*, No. 1150, 1988 WL 86489, 1988 Tenn.App.LEXIS 525 (Tenn.Ct.App. Aug. 19, 1988) (claim for punitive damages denied on ground that T.C.A. Sec. 56–7–105 is the exclusive remedy for bad faith refusal to pay claims arising from insurance policies, but tort claims arising out of refusal to pay on an insurance policy were dismissed on other grounds); *Bard's Apparel Manufacturing, Inc. v. Bituminous Fire and Marine Insurance Co.*, 849 F.2d 245, 248 (6th Cir.1988) (not an issue on appeal, but the U.S. District Judge dismissed the claim for punitive damages before trial); *King v. Mutual Life Insurance Co. of New York*, 114 F.Supp. 700 (E.D. Tenn.1953) (arguably implies that 25 percent penalty is exclusive remedy). *Cf. Mitchell v. New Hampshire Insurance Company*, No. 89–369–II, 1990 WL 50723, 1990 Tenn.App.LEXIS 286 (Tenn.Ct.App. April 25, 1990) (damages appearing to be in the nature of consequential damages were incorporated into the penalty award).

---

**4.** The court expresses no opinion on whether bad faith not only triggers application of the statute but also affects determinations of the amount of additional liability. To the extent that the degree of bad faith might be considered in establishing an amount, there would be a punitive component to the "bad faith penalty." Additionally, the mere fact that bad faith is a prerequisite to application of the statute is enough to give "penal" or "punitive" characteristics to the provision.

As worded above, this specific holding from *Chandler* could leave open the theoretical possibility of consequential damages, resulting from the failure to pay, being awarded separately from penalty damages arising from a *bad faith* failure to pay. Under this theory, the additional liability of up to 25 percent is connected solely to the bad faith aspect of a failure to pay, and the actual consequences of a refusal to pay are treated as a separate issue of damages not subject to the 25 percent cap. Such a view, however, ignores the statutory language establishing "bad faith" as a prerequisite to any additional damages beyond the property loss and interest "in all cases." In the court's view, that language eliminates the possibility of any additional damages when there is no bad faith. Additionally, as discussed above, the plain language of the statute indicates that the 25 percent "bad faith penalty" is actually a provision allowing limited recovery of consequential damages. Furthermore, Chandler clearly did not allow for any consequential damages to be imposed in addition to the 25 percent penalty in a bad faith case. It would therefore be anomalous to allow consequential damages as a separate component of damages in a case involving a good faith, but improper, failure to pay a claim. Such a rule would potentially allow for greater damages in a good faith failure to pay case than in a bad faith failure to pay case which was limited by the 25 percent cap.

Admittedly, there is a more recent decision by the Tennessee Court of Appeals which appears to support the plaintiffs' position. In *Wilson Estate v. Arlington Auto Sales*, 743 S.W.2d 923 (Tenn.Ct.App. 1987), an insurance company wrongfully refused a claim upon a credit life insurance policy purchased in conjunction with the purchase of a car. The car was co-purchased by a mother and aunt for the use of a daughter. As a prerequisite to the purchase, a credit life insurance policy was obtained on the mother. After the mother later died, the insurance company refused to pay, and the aunt, daughter, and mother's estate brought suit for the benefits. The appellate court's discussion of the trial court's determination is as follows:

> The trial court determined that [the insurer] had wrongfully, fraudulently, and in bad faith denied the policy coverage after [the mother's] death, and that as a result ... [the daughter] had been "unjustly deprived of the real and effective use of the automobile purchased for her" and had been "wrongfully treated in connection with the continuing encumbrance of a lien" against the automobile that would have been released had [the insurer] timely paid the claim ... The trial court also concluded that [the insurer's] bad-faith refusal to pay the claim had inflicted additional expense, loss, and injury upon the holder of the policy. The court, therefore imposed additional liability upon [the insurer] under the statutory provisions of T.C.A. Sec. 56–7–105 ... The trial court awarded $750 to the estate [of the mother, and] $12,250 to [the daughter]—subject to a lien in favor of [a bank] for the amount due on the remainder of the automobile loan....

Thus, in addition to the standard policy benefits, the trial court apparently awarded the daughter consequential damages resulting from the breach of a contract of which she was a third party beneficiary. The insurer appealed the award on the ground that she could not have been entitled to more than $6,691.83, the principal balance on the loan. The appeal was rejected, however, and the appellate court specifically mentioned the loss of use of the automobile, a consequential damage, as support for the award. There was no mention of section 56–7–105 in this portion of the opinion.[5] Quoting from *Chambliss, Bahner, supra*, the court noted that consequential damages were available in a breach of contract action so that the plaintiff could be placed in the position he would have been in had the contract been performed.

---

5. Later, the opinion did discuss and approve a bad faith penalty awarded to the mother's estate.

The present defendants have argued, without showing how, that a "close reading and analysis of the amounts awarded [in *Wilson*] indicates the court awarded the principal and unpaid accumulated interest on the vehicle, pre-judgment interest, and an additional amount under the bad faith penalty."[6] Accordingly, the defendant argues, there was no award of consequential damages as distinct damages in addition to a bad faith penalty. Under this view, the mention of loss of use of the automobile was used only as "the additional loss, expense, or injury" necessary to support the award of the penalty. This view ignores, however, the language indicating that only the actual policy holder, the estate, received an award under the 25 percent provision of section 56–7–105. A straightforward reading of the opinion indicates that no bad faith penalty was awarded to the daughter, but that consequential damages were. Consequently, the court rejects the defendants' strained construction of *Wilson* even if acceptance would provide an avenue for reconciling *Wilson* with *Chandler*. Nevertheless, the court also rejects the plaintiffs' argument that *Wilson* mandates allowance of consequential damages in addition to the 25 percent penalty in this case.

Perhaps *Wilson* could be distinguished on the ground that it involved a third party beneficiary who arguably was outside the reach of the 25 percent provision since the statute speaks of "liability to the holder of the policy." The court does not rely upon this arguable distinction, however. To the extent that *Wilson* does actually stand for the proposition that an insured can receive consequential damages in addition to the 25 percent penalty for failure to pay an insurance claim, the court concludes that *Wilson* is an inaccurate statement of Tennessee law. Rather, the court follows *Chandler* and its instruction that the 25 percent provision provides the only remedy for additional liability for refusal to pay an insurance claim. For one thing, *Chandler* addresses the concept much more explicitly than does *Wilson*. *Wilson* does not even discuss the relevance of section 56–7–105 when addressing the damages awarded to the daughter as discussed above. Second, in this court's view, *Chandler* is much more in line with the plain language of the statute. *Cf. Sisk v. Valley Forge Insurance Co.*, 640 S.W.2d 844, 851, 852 (Tenn. Ct.App.1982) (arguably implies, contrary to *Wilson*, that loss of use of automobile and certain other consequences of failure to pay a claim are properly considered in setting amount of bad faith penalty after bad faith has already been determined from other evidence).

For the foregoing reasons, the plaintiffs' claim of damages for mental anguish, lost profits, loss of a lease, and reimbursement of a fine will be dismissed. An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously filed, the defendants' motion for partial summary judgment is hereby granted. The plaintiffs' claim for damages for mental anguish, lost profits, loss of a lease, and reimbursement of a fine is hereby dismissed.

---

**6.** The defendants presumably argue that the $12,250 can be seen as almost $7,000 for the remaining principal on the loan, more than $2,000 of accumulated interest on the loan, a separate amount of prejudgment interest, and then a 25 percent penalty. While admittedly most likely, it is not absolutely certain that there was over $2,000 of accumulated interest on the loan. The *Wilson* opinion can arguably be read as indicating that prejudgment interest was what brought the total due on the credit contract to more than $9,000 when the principal was almost $7,000. If this were true, the additional damages would exceed the 25 percent limit. Nevertheless, even if the figures can be broken down in a way that allows for a bad faith penalty as argued by the defendants, there is no indication that such actually was the *Wilson* court approach.