**PERSIAN GALLERIES, INC., Plaintiff–Appellee, Cross–Appellant,**

v.

**TRANSCONTINENTAL INSURANCE COMPANY, Defendant–Appellant, Cross–Appellee.**

Nos. 93–5129, 93–5130.

United States Court of Appeals, Sixth Circuit.

Argued May 10, 1994.

Decided Oct. 7, 1994.

James C. Wright, William D. Vines (argued and briefed), Ronald C. Koksal, Butler, Vines, Babb & Threadgill, Knoxville, TN, for plaintiff-appellee, cross-appellant.

Charles F. Sterchi, III (argued), Archie R. Carpenter (briefed), Carpenter & O'Connor, Knoxville, TN, for defendant-appellant, cross-appellee.

Before: KRUPANSKY, BOGGS, and SUHRHEINRICH, Circuit Judges.

KRUPANSKY, Circuit Judge.

Defendant-Appellant, Transcontinental Insurance Company (Transcontinental), has appealed the jury verdict in favor of plaintiff-appellee, Persian Galleries, Inc., on plaintiff's breach of insurance contract claim. Persian Galleries has cross-appealed the dismissal of its cause of action under the Tennessee Consumer Protection Act of 1977 (TCPA), TENN. CODE ANN. § 47–18–104.

Persian Galleries filed its initial action on March 13, 1991, charging that defendant had breached its insurance contract by refusing to pay for the loss of 27 oriental rugs covered under plaintiff's "all risks" insurance policy. In an answer dated March 24, 1992, Transcontinental denied any breach of contract and raised a number of affirmative defenses, including material misrepresentation by the plaintiffs, fraud and failure to cooperate with the company in investigating the claim. On May 19, 1992, plaintiff moved to amend the pretrial order and sought recovery under the Tennessee Consumer Protection Act. The motion was initially granted but after the defendant challenged the amendment, the court dismissed the TCPA claim, concluding that plaintiff, as a corporation, was not a consumer within the meaning of the Act. A trial in August 1992 on plaintiff's breach of insurance contract claim resulted in a hung jury and a mistrial.

As a tactical maneuver upon retrial, Transcontinental withdrew all of its affirmative defenses to emphasize that plaintiff bore the burden of proving a loss covered by the insurance policy at issue. After Persian Galleries sought reconsideration of the district court's previous order dismissing its cause of action under the TCPA, the court concluded that Tennessee would permit a corporate entity to sue as a consumer under the Act, but refused to reinstate the claim on the basis that TENN.CODE ANN. § 56–7–105 was the sole and exclusive remedy for a policy holder to recover damages in excess of the policy as a result of the insurer's bad faith refusal to pay a claim. The retrial in December 1992 resulted in a jury verdict in favor of Persian Galleries for $468,400 plus prejudgment interest.

Persian Galleries is in the business of selling oriental rugs. On March 24, 1990, the plaintiff's Knoxville, Tennessee store was allegedly burglarized and 27 rugs were stolen. Plaintiff filed a claim under its "all risks" insurance policy with Transcontinental, seeking coverage for the stolen property. Transcontinental denied that any loss had occurred and refused coverage. Persian Galleries then filed the instant action, charging defendant with breach of its insurance contract.

At trial, Masoud "Max" Kashani, Vice President of Persian Galleries, testified that on the evening of March 24, 1990, he was notified by his security service that the alarm at his Knoxville store had been activated, whereupon he proceeded to the store to investigate. Upon arrival, Kashani inspected the store and observed that several rugs were missing and that the glass from a broken front door window, which had apparently afforded entry into the premises, had been shattered over the floor of the storeroom.

Monte Boone, a patrol officer with the Knoxville Police Department, also responded to the break-in at Persian Galleries. When he arrived at the crime scene, the audible alarm was sounding and he observed that the glass in the front door had been partially broken out. He noticed glass on the sidewalk outside the door; in contrast to Kashani, however, Boone testified that there was no glass inside the store but, rather, the shattered glass from the door remained undisturbed on the sidewalk. Boone and another officer removed the remainder of the glass from the door frame in order to keep it from falling as they passed through the opening.

At trial, the defendant insurance company introduced evidence purporting to prove that no burglary had occurred at Persian Galleries. Richard Mark King, the branch manager for plaintiff's alarm company, described the alarm system in place at the time of the burglary. He explained that the store had two movement detectors as well as two additional detectors that would be activated by the sound of shattering glass. He testified further that all alarm activations were transmitted to the central office where they were memorialized in a computer database. Referring to these company records, King testified that when the alarm at Persian Galleries had been activated on the night of the burglary, it had reset itself within a few seconds. He also testified that the alarm would have continued to sound so long as there had been movement within the store.

Defendant presented the expert testimony of Billy Joe Jernigan who opined that, from his inspection of the alarm system in question and the relevant records, the intruder could have been in the store for approximately twenty seconds. On cross-examination, however, Jernigan admitted that he had only examined the system after it had been upgraded following the break-in and had not conducted any tests of its operations before that time. Jernigan also conceded on cross-examination that continuous movement within the storeroom could have resulted in an alarm reset time lag of approximately one and a half minutes thereby permitting the burglary to have been completed.

Plaintiff countered defendant's evidence with the testimony of its own expert witness, James Geiger. Geiger was the only engineer who had tested the system as it had existed on the date of the burglary. At trial, he testified that the system records were entirely consistent with the time frame of the theft. First, he explained that the burglars could have entered through the door in question and then have removed the rugs quickly

without trying to avoid the motion detectors—i.e., a "smash and grab." Second, he testified that the theft could have occurred by avoiding the motion detectors' sensory beams. He finally explained that the alarm could have been avoided by covering a device on the wall, preventing the system from activating until the burglars left.

Over defendant's objection, the plaintiff also introduced the expert testimony of Lieutenant Larry Johnson, a detective in charge of the major crime division of the Knox County Sheriff's Department. Johnson testified that he had conducted an experiment by reenacting the burglary under ostensibly the same conditions that existed within and without the premises on the evening of the incident. During this experiment, which had been videotaped and introduced as evidence at trial, the window glass in the entry door had been broken out and four individuals removed 24 rugs in one minute and thirty-five seconds. The video was also used to contend that an individual walking over the shattered tempered glass would not overly disturb the scattered shards on the store's cement floor or mar the floor's surface. In an effort to discredit the video presentation, defendant recalled Officer Boone who testified that the physical evidence in and about the store as reconstructed by the plaintiff did not accurately reflect the conditions as he had observed them upon his arrival at the site.

The jury returned a verdict for the plaintiff in the amount of $468,400 and awarded prejudgment interest at a rate of ten percent. The district court entered final judgment and this timely appeal and cross-appeal followed.

As its first assignment of error, defendant charged that the trial court improperly instructed the jury as to the plaintiff's burden of proof to recover under the "all risks" insurance policy.[1] The district court instructed

This is an action for breach of an insurance contract. You have heard the theories of the parties, both at the beginning of this trial and here again at final argument. I won't go into those theories except to say that the legal effect of the conflict between the theories of the parties is to place the burden of proof on plaintiff to prove by a preponderance of the evidence that it suffered a loss covered by the policy. The plaintiff alleges loss by risk of direct physical loss. It is the defendant's contention that there was not such a loss. In order to show that it suffered a loss under the policy, it is not necessary for plaintiff to show how the property came to be lost. It is not necessary for the plaintiff to show the method or means by which the property came to be lost. It is sufficient if plaintiff shows the property is lost and covered by the direct physical loss provision of the contract of insurance. The defendant has not asserted any exclusions under the policy.

Defendant argued that this instruction was improper because it did not require the plaintiff to prove that the loss was fortuitous, erroneously contending that under the facts of this case the term fortuitous was synonymous with theft by persons unknown to the parties to the insurance contract. *See Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 318 (7th Cir.1990) ("To recover under an 'all risk' insurance policy, the plaintiffs must demonstrate that a loss has occurred and that loss was caused by a fortuitous event"). Defendant further urged that the above instruction could have permitted the jury to return a verdict for Persian Galleries even if it had concluded that plaintiff had participated in the loss of the rugs. To correct the professed error, the defendant had requested the following instruction in lieu of the one given by the district judge.

1. Plaintiff's insurance policy included the following "all risks" attachment.
   A. Covered Causes of Loss
      When Special is shown in the Declarations, Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:
      1. Excluded in Section B., Exclusions; or

2. Limited in Section C., Limitations....
   Persian Galleries' insurance policy included the "special" declaration, making the above applicable. Moreover, because defendant withdrew all of its affirmative defenses upon retrial, none of the applicable exclusions or limitations were at issue.

The plaintiff in this case alleges it suffered a loss by theft. It is the defendant's contention that there was not such a loss. In order to show that it suffered a loss under the policy, it is not necessary for plaintiff to show exactly how the property came to be lost. It is not necessary for the plaintiff to show the method or means by which the property came to be lost. It is sufficient if the plaintiff shows the property is lost by theft.

■ In reviewing a court's jury charge, the standard on appeal is "'whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury.'" *United States v. Buckley*, 934 F.2d 84, 87 (6th Cir.1991) (quoting *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir.1984)). Because this is a diversity case, state law determines the substance of the jury instructions. *Teal v. E.I. Du Pont de Nemours & Co.*, 728 F.2d 799, 802 (6th Cir. 1984). Federal law, however, still governs in determining whether the jury instruction was prejudicial. *Id.*

■ The central question inherent to this assignment of error is whether plaintiff was required, in the first instance, to prove that its rugs had been stolen as the result of a theft perpetrated by persons unknown to the parties to the contract of insurance and that plaintiff had not fraudulently caused the event to occur as urged by the defendant or whether it simply had to prove that a burglary of its premises occurred and that its rugs were stolen. To support its proffered jury instruction, defendant cited to a number of cases which, it correctly reasoned, placed the initial burden upon the plaintiff to prove that a loss occurred and that the loss was due to some fortuitous event or circumstance, characterized, in the instant case, as a burglary which resulted in the theft of certain oriental rugs. *See, e.g., Harbor House, supra; Texas Eastern Transmission Corp. v. Marine Office-Appleton & Cox*, 579 F.2d 561, 564 (10th Cir.1978) (defining fortuitous as "an event which so far as the parties to the contract are aware, is dependent on chance. It may be beyond the power of any human being to bring the event to pass; it may be within the control of third persons, it may even be a

past event, as the loss of a vessel, provided that the fact is unknown to the parties") (quoting RESTATEMENT OF CONTRACTS § 291, cmt. a (1932)).

Although the defendant has correctly defined the criteria necessary to sustain a recovery under an "all risks" policy, it has not demonstrated that the trial court's instruction in the instant case avoided the rule, or that plaintiff had the initial burden to prove that the rugs had been stolen by persons unknown to the parties to the insurance policy before it could recover. Precedent dictates that under an "all risks" policy like the one at issue here, a plaintiff need only prove that a fortuitous event caused the loss, which in this case it characterized as a theft by burglary, a conclusion that was obvious from the physical evidence at the scene of the crime. *See Texas Eastern*, 579 F.2d at 564; *Harbor House, supra.* Plaintiff is not required to prove that the theft was perpetrated by persons unknown to the parties to the contract as implied by the defendant's proffered jury instruction. The defendant's requested instruction would have compelled plaintiff to prove the facts and circumstances of the theft and by implication that it, the plaintiff, was not a party to the theft nor fraudulently caused it to occur. Because the burden to prove fraud, an affirmative defense, rests upon the defendant, the defendant's proposed jury instruction would have improperly shifted its burden to the plaintiff by requiring the plaintiff to prove loss by a theft to which it was not a party. The instruction given by the district court correctly stated the appropriate burden and was, accordingly, not clearly erroneous.

■ Defendant next argued that the district court erred in admitting evidence of a videotaped reenactment of the alleged theft. This court reviews a trial court's admission of evidence for an abuse of discretion. *United States v. Bonds*, 12 F.3d 540, 554 (6th Cir. 1993). "The scope of this discretion has been broadly construed, and the trial court's actions are to be sustained 'unless manifestly erroneous.'" *Id.* (quoting *United States v. Green*, 548 F.2d 1261, 1268 (6th Cir.1977)).

The admissibility of experimental evidence depends upon its relevance and probativity.

*Crown Cork & Seal Co. v. Morton Pharmaceuticals, Inc.*, 417 F.2d 921, 926 (6th Cir. 1969). Experimental evidence is probative "if the conditions of the experiment were identical with or similar to the conditions of the transaction in litigation." *Id.* The Eighth Circuit has further articulated the standards for admission of experimental evidence.

"The admissibility of evidence of experimental tests rests largely in the discretion of the trial judge and [its] decision will not be overturned absent a clear showing of an abuse of discretion." *Sprynczynatyk v. General Motors Corp.*, 771 F.2d 1112, 1124 (8th Cir.1985), *cert. denied*, 475 U.S. 1046, 106 S.Ct. 1263, 89 L.Ed.2d 572 (1986). "A court may properly admit experimental evidence if the tests were conducted under conditions substantially similar to the actual conditions. Admissibility, however, does not depend on perfect identity between actual and experimental conditions. Ordinarily, dissimilarities affect the weight of the evidence, not its admissibility." *Randall v. Warnaco, Inc.*, 677 F.2d 1226, 1233–34 (8th Cir.1982) (citations omitted). *Champeau v. Fruehauf Corp.*, 814 F.2d 1271 (8th Cir.1987).

In the instant case, defendant reasoned that the district court abused its discretion in admitting the videotaped reenactment of the theft because the reconstructed scene of the burglary and the reenactment had not substantially recreated and reflected the conditions as they existed at the time of the burglary and was accordingly unduly prejudicial. The purpose of the videotape was to demonstrate that the theft of the rugs could have been completed within the time interval that elapsed between the activation of the alarm system and the arrival of the first officer. Initially, defendant observed that without the tape to stabilize the glass which had remained in place within the door frame, as depicted in the video, it could have fallen from the frame as a result of movement through the opening, posing an obvious hazard to anyone passing through the opening and thereby considerably slowing any pas-

sage through the door beyond the time interval between the activation of the alarm and the arrival of the first officer at the scene. The alleged discrepancies between the reconstructed crime site and the conditions as they may have existed on the night of the theft reflect, not upon the admissibility of the evidence, but rather upon its credibility, an assessment assigned exclusively to the discretion of the jury.

Defendant's arguments concerning the location and significance of the shattered glass as described in the conflicting testimony of Officer Boone and plaintiff's expert witness, Lieutenant Johnson, again posed a credibility evaluation for the jury and not a legal question of admissibility. *Champeau, supra.* Because the videotaped experiment was substantially similar to the actual conditions at the burglary scene, the district court did not abuse its discretion in admitting evidence of the reenactment.

Having reviewed the record in its entirety and the briefs, and having considered the arguments of counsel, this court concludes that defendant's remaining assignments of error are without merit.

■ On cross-appeal, plaintiff has charged that the trial court erred in dismissing its cause of action under the Tennessee Consumer Protection Act. Whether the district court properly dismissed the complaint pursuant to Fed.R.Civ.P. 12(b)(6) is a question of law which this court reviews de novo. A district court's grant of a motion to dismiss is proper when there is no set of facts that would allow the plaintiff to recover. All factual allegations are deemed true and any ambiguities must be resolved in plaintiff's favor. *Jackson v. Richards Medical Co.*, 961 F.2d 575, 577 (6th Cir.1992).

As previously observed, the trial court decided that although a corporation could maintain a cause of action under the TCPA, Persian Galleries could not invoke the Act because its claim was anchored in the defendant's refusal to pay a covered loss. The trial court further concluded that TENN.CODE ANN. § 56–7–105 [2] provided the sole and ex-

**2.** § 56–7–105 provides that (a) The insurance companies of this state, and foreign insurance

companies and other persons or corporations doing an insurance or fidelity bonding business

clusive remedy for extra-contractual damages resulting from an insurer's bad faith processing of a claim. On appeal, Persian Galleries has asserted that the district court erred in dismissing its TCPA claim because plaintiff's cause of action against the defendant was anchored in fraudulent acts not cognizable under the Tennessee bad faith statute.

■ Whether and to what degree the TCPA embraces the insurance industry has not been considered or resolved by the Tennessee Supreme Court; two Tennessee courts of appeal, however, have discussed and resolved the issues. Because this is a diversity case, this court applies the interpretation of a state law as pronounced by the state's highest appellate court which has considered the issue, *Olsen v. McFaul,* 843 F.2d 918, 928 (6th Cir.1988), in this case the Tennessee Court of Appeals, "unless [this court] is convinced by other persuasive data that the highest court of the state would decide otherwise." *Mathis v. Eli Lilly & Co.,* 719 F.2d 134, 141 n. 15 (6th Cir.1983) (quoting *Clutter v. Johns–Manville Sales Corp.,* 646 F.2d 1151, 1153 (6th Cir.1981)).

■ In *Chandler v. Prudential Ins. Co.,* 715 S.W.2d 615 (Tenn.App.1986), after plaintiff's disability benefits had been terminated, she charged the defendant insurance company with tortious bad faith and breach of the TCPA. The Tennessee Court of Appeals concluded that the tort of bad faith was not cognizable in Tennessee between an insurer and an insured, but rather that the bad faith penalty statute, TENN.CODE ANN. § 56–7–105, provided the exclusive redress for bad faith claims against insurers by the insured. *Chandler,* 715 S.W.2d at 621. The court in *Chandler* also found plaintiff's TCPA claim to be inactionable because it was anchored in

defendant's alleged bad faith termination of plaintiff's benefits and, as such, the exclusive remedy was the bad faith penalty statute contained within the insurance code. *Chandler,* 715 S.W.2d at 624–25.[3]

In *Rice v. Van Wagoner Companies,* 738 F.Supp. 252 (M.D.Tenn.1990), a federal district court sitting in diversity reached a similar conclusion regarding the exclusivity of Tennessee's bad faith penalty statute. In *Rice,* as in the instant action, the plaintiffs sought extra-contractual damages resulting from the defendant insurer's refusal to pay a claim. In addition to the property damage sustained and the statutory bad faith penalty, plaintiffs sought recovery for lost profits, reimbursement of a fine, the cost of a lost lease and compensation for mental anguish. Adopting the reasoning set forth in *Chandler, supra,* the court rejected plaintiff's tort claims. In addition, the district court concluded that plaintiff's claims for consequential damages resulting from defendant's breach of the insurance contract were also barred by the exclusive remedy set forth in the bad faith penalty statute. *Rice,* 738 F.Supp. at 254.

In *Skinner v. Steele,* 730 S.W.2d 335 (Tenn.App.1987), however, an opinion issued by the same section of the Tennessee Court of Appeals that decided *Chandler,* the court stated that "[n]othing in the insurance code indicates that it [the insurance code] is intended to be the exclusive remedy for deceptive practices in the insurance industry." Rather, the court concluded that "the insurance industry is not exempt from the Tennessee Consumer Protection Act...." *Id.* at 338. Plaintiff, in the instant action, has urged this court to apply *Skinner* and recognize that its claim under the TCPA is actionable. Moreover, plaintiff has argued that the

---

in this state, in all cases when a loss occurs and they refuse to pay the same within sixty (60) days after a demand shall have been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest thereon, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it shall be made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that such failure to pay inflicted additional expense, loss,

or injury upon the holder of the policy or fidelity bond....

3. Plaintiff has correctly observed that the *Chandler* court refused to conclude that the TCPA was entirely inapplicable to the insurance industry, *Chandler,* 715 S.W.2d at 624; the court did, however, conclude that the bad faith penalty statute was the exclusive remedy in cases charging bad faith denials of insurance claims. *Id.* at 625.

court's decision in *Chandler* did not eliminate plaintiff's cause of action under the TCPA and that, even if it did, the court's subsequent decision in *Skinner* should prevail.

The broad language of *Skinner* is not in conflict with *Chandler* because the cases are distinguishable and fact specific. In *Skinner,* the plaintiffs had charged that the defendants failed to disclose certain financial difficulties and misrepresented the soundness of an investment when it sold them an annuity as distinguished from *Chandler* wherein plaintiff's action was anchored in the insurer's bad faith refusal to pay an insured claim.

In addressing this asserted conflict between *Chandler* and *Skinner,* the district court in the instant case distinguished deceptive practices of an insurance company in the marketing and sale of insurance products from bad faith refusals to process a claim and concluded that the former were actionable under the TCPA but that the latter were inactionable because the statutory bad faith penalty, TENN.CODE ANN. § 56–7–105, provided the exclusive remedy for such conduct. This reasoning parallels the decision in *Rice, supra,* where the district also concluded that the bad faith penalty statute was the sole and exclusive remedy for bad faith failure to process a claim. Furthermore, plaintiff has at least implicitly concurred in this distinction as its arguments attempt to portray defendant's conduct at issue as deceptive practices in the marketing and sale of the insurance policy rather than as a bad faith refusal to process the claim.

As the parties have presented no persuasive authority to convince this court that the Tennessee Supreme Court would decide otherwise, this court accordingly concludes that under Tennessee law a plaintiff may institute an action under the TCPA based upon the fraudulent and deceptive acts of an insurer, except for actions covered by TENN.CODE ANN. § 56–7–105, which provides the exclusive remedy for extra-contractual damages resulting from an insurer's bad faith processing of a claim. The crucial question on appeal in the instant case is whether Persian Galleries has alleged a deceptive practice that is embraced by the TCPA or whether it has simply charged that defendant engaged in bad faith by refusing to pay their claimed loss.

The Tennessee Consumer Protection Act of 1977 specifically declared that unfair or deceptive acts or practices affecting the conduct of any trade or commerce are unlawful. TENN.CODE ANN. § 47–18–104(a). Plaintiff has relied on the following specific sections of the Act.

§ 47–18–104(b) Without limiting the scope of subsection (a), the following unfair or deceptive acts or practices affecting the conduct of any trade or commerce are declared to be unlawful and in violation of this part:

. . . .

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such person does not have;

. . . .

(7) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

. . . .

(12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;

. . . .

(21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services;

. . . .

(27) Engaging in any other act or practice which is deceptive to the consumer or to any other person.

TENN.CODE ANN. § 47–18–104(b).

■ A review of plaintiff's allegations discloses that the charged deceptive practices implicate conduct that would be considered bad faith failure to pay a claim. Plaintiff has argued, for instance, that the defendant did not honestly attempt to adjust the loss, that defendant never intended to pay the loss, and that defendant was dilatory in processing the claim. These allegations all concern bad faith conduct exclusively actionable under TENN.CODE ANN. § 56–7–105. Furthermore, plaintiff has asserted that it was induced to buy insurance from the defendant by advertisements and representations concerning the characteristics and quality of the insurance. These alleged advertisements and representations consisted of defendant's purported fast and fair processing of claims, conduct that would again fall within the confines of the bad faith statute. Plaintiff has argued that these representations form the basis for a viable claim because they had been made before the purchase of the policy and therefore had nothing to do with the processing of the insurance claim. The argument is not persuasive in its effort to bootstrap a bad faith claim into a deceptive practice cause of action by artfully pleading that defendants promised in advance to process losses quickly and fairly (in "good faith") and that defendants failed to do so (in "bad faith"). The only allegation that has the appearance of merit as a deceptive practice cognizable under the TCPA is the allegation that defendant falsely represented itself as an expert in handling insurance unique to oriental rug dealers. This is, in essence, the same argument advanced above—namely, "that the insurance company was an expert in the field of insuring clients involved with oriental rugs [and] that given that expertise, adjustment of any losses would be promptly and fairly handled." In sum, all of the claims made by plaintiff under the TCPA revolved around defendant's failure to adjust the claim "promptly and fairly." This court concludes that because plaintiff has not alleged any deceptive practices beyond defendant's bad faith failure to process a claim, the assignment of error on cross-appeal is without merit.

Accordingly, for the reasons stated, the decision of the district court is AFFIRMED.