**LERER REALTY CORPORATION and Apex Supply Company, Plaintiffs-Appellees,**

v.

**MFB MUTUAL INSURANCE COMPANY, Defendant-Appellant.**

No. 72–1254.

United States Court of Appeals, Fifth Circuit.

Feb. 14, 1973.

Rehearing Denied April 10, 1973.

Rehearing and Rehearing En Banc Denied April 20, 1973.

Goldbold, Circuit Judge concurred in part and dissented in part and filed opinion.

R. B. Cousins, Larry L. Gollaher, Dallas, Tex., James L. Fetterly, Robert M. Wattson, Minneapolis, Minn., for defendant-appellant.

Bill C. Hunter, Timothy J. Vineyard, Dallas, Tex., for plaintiffs-appellees.

Before GODBOLD, DYER and CLARK, Circuit Judges.

PER CURIAM:

Lerer Realty Corporation and Apex Supply Company (Lerer) recovered a jury verdict in their suit on a windstorm insurance policy issued by MFB Mutual Insurance Company (MFB). On this appeal MFB contends that Lerer's expert witnesses were not qualified to express the opinions which went to the jury; Lerer didn't meet its burden of proving its building was damaged exclusively by wind not contributed to by rain; and, alternatively, that actual cash value, not replacement cost, was the policy measure of recovery. We affirm on witness qualification and the sufficiency of the evidence, but modify the measure and amount of damages awarded.

Lerer owned a warehouse building which was discovered in a collapsed condition following a nighttime wind and rainstorm. There were no witnesses. No adjacent buildings showed wind damage. Clogged drainage outlets in a parapet around the warehouse's relatively flat roof could have caused an accumulation of rainwater. Lerer produced a meteorologist who testified that the

storm system in the vicinity on this evening was capable of producing a tornado vortex and that his examination of the site disclosed evidence that a vortex had touched down at Lerer's building. Lerer also sponsored one witness who was a graduate structural engineer (now engaged in business as a building contractor) and another witness who was a graduate civil engineer. They testified that neither rain nor any accumulation of rooftop water caused or contributed to the collapse. The structural engineer-building contractor further opined that a strong negative pressure force on the exterior of the building—a tornado—had caused the damage.

MFB produced the testimony of a meteorologist to the effect that no tornadic vortex had occurred on the night in question and that there was no evidence of vortex contact at the Lerer building site. MFB also obtained the testimony of a professional consulting engineer who expressed the opinion that rainwater was probably the proximate cause but certainly a contributing cause of the damage.

[redacted] The determination of the qualifications of an expert witness is committed to the sound discretion of the trial judge and that discretion will not be disturbed in the absence of a clear showing of abuse. Eastburn v. Ford Motor Company, 471 F.2d 21 (5th Cir. 1972). No precedential purpose would be served by detailing the minutiae of the bases for each witness's observations. It is sufficient to say that an examination of the record indicates no abuse of discretion in the admission of all of these expert opinions. Clearly the resulting clash of these informed beliefs created issues for jury resolution under Boeing Company v. Shipman, 411 F.2d 365 (5th Cir. 1969). It is not necessary to reach or rule on whether Lerer had the burden of proving not only that a covered loss (wind damage) occurred, but also that an exception to coverage (rain or rainwater) had not contributed.

[redacted] The policy liability was limited to actual cash value, not to exceed repair or replacement cost. By endorsement MFB extended the indemnification agreement to cover the cost, as of the date of loss, of replacement in a new condition with materials of like size, kind and quality, subject to the following conditions: (1) The repair, rebuilding or replacement had to be made within a reasonable time; (2) Total liability was not to exceed (a) the cost of repair, *or* (b) the cost to rebuild, *or* (c) the actual expenditure incurred in rebuilding, repairing or replacing.[1] A reading of

1. The specific policy language pertinent here was as follows:

> Subject to Article 6.13 of the Texas Insurance Code—1951, V.A.T.S., liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, and without compensation for loss resulting from interruption of business or manufacture, nor shall it exceed the interest of the insured, or the specific amounts shown under "Amount of Insurance."

In pertinent part, the "Repair or Replace" endorsement reads:

> It is understood and agreed, subject to all the terms, conditions and stipulations of the Policy to which this endorsement is attached, not in conflict herewith, that in case of loss or damage to:
>
> All property covered under this Policy
>
> . . .
>
> this Policy is hereby extended to indemnify the Insured for the difference between the actual cash value (ascertained with proper deduction for depreciation) of such property at the time of loss or damage and the cost, as of the date of loss, of replacement in a new condition with materials of like size, kind and quality, all subject to the following conditions:
>
> 1. If property damaged or destroyed is useless to the insured or is not repaired, rebuilt or replaced on the same or another site within a reasonable time after the loss or damage, this Company

this "Repair or Replace" endorsement in context with the primary liability proviso of the policy discloses a clear and unambiguous undertaking to pay the insured the actual cash value of the damaged property at the time of loss, less depreciation, unless the insured actually repaired, rebuilt or replaced within a reasonable time. If restoration is made, then, and only then, the liability of MFB would be calculated under the endorsement.

■ Pursuant to the special verdict procedure of Rule 49, Federal Rules of Civil Procedure, the jury found that: Lerer's delay in beginning repairs, replacement or rebuilding (two and one-half years as of the time of trial) was not unreasonable under the terms of the policy; 119,400 dollars was the replacement cost of the building; 73,000 dollars was the value of the building prior to damage; and 12,000 dollars was the value of the building after damage. Acting upon an interpretation of the policy language which would permit recovery of restoration costs without regard to actually restoring the structure, the trial court entered judgment for Lerer for 119,400 dollars. Judgment should have been entered for the actual cash value of the property destroyed. Thanks to the enlightening specificity of the special verdicts, we can readily calculate the actual cash value of the property destroyed—73,000 dollars minus 12,000 dollars—a net of 61,000 dollars. Accordingly, we direct the district court to modify the final judgment to provide that Lerer (and Apex) recover from MFB the sum of 61,000 dollars with interest calculated as initially provided, and trial court costs. As modified, the judgment is affirmed.

The costs of this appeal shall be divided between the appellant and the appellees.

Affirmed as modified.

GODBOLD, Circuit Judge (concurring in part and dissenting in part):

I concur in the majority opinion to the extent that it upholds the introduction of expert testimony and submission of the case to the jury, but I dissent from that portion modifying the damages.

The insurer, MFB, construes its policy provisions to mean that repair or replacement is a condition precedent to indemnification under the endorsement. An available and opposite construction is that the insurer must pay replacement costs unless the insured fails to replace within a reasonable time. Under this latter construction, MFB's obligation under the endorsement continues until passage of a reasonable time without repair or replacement. Implicitly rejecting MFB's construction and embracing the opposing view, the trial court submitted the following special interrogatory to the jury:

Do you find from a preponderance of the evidence that it has been a reasonable time for the plaintiffs not to have repaired, replaced, or rebuilt the building in question since its damage on May 6, 1969?

ANSWER "It has been a reasonable time for plaintiffs not to have repaired" or "It has not been a reason-

shall not be liable for more than the actual cash value (ascertained with proper deduction for depreciation) of the property destroyed.
2. The total liability of this Company under this Policy for loss to property included under this endorsement shall not exceed the smallest of the following:

a. the cost to repair, or
. b. the cost to rebuild or replace, all as of the date of loss, on the same site, with new materials of like size, kind and quality, or
c. the actual expenditure incurred in rebuilding, repairing or replacing on the same or another site.

able time for plaintiffs not to have repaired"

ANSWER It has been a reasonable time for plaintiffs not to have repaired.

Since the jury found that a reasonable time had not expired, the trial court awarded replacement costs to Lerer Realty. The majority reverse the implicit adoption by the trial judge of the construction favoring the insured and adopt, as a matter of law, the construction favoring MFB.

Boiled to its essence the issue is whether actual repair or replacement is a condition precedent or a condition subsequent to MFB's obligation under the endorsement. If actual repair or replacement within a reasonable time is a condition precedent, then the insurer's obligation under the endorsement has never arisen. If, however, its obligation vests upon loss only to be divested upon passage of a reasonable time without repair or replacement, the insurer must lose on the strength of the jury's finding that a reasonable time had not expired. The issue is to be viewed with the realization that the sole purpose of the endorsement is to extend to the insured, under certain conditions, coverage for replacement cost rather than actual cash value of the property lost. For this more extensive coverage the insured pays an additional premium.

With the issue so framed, I set out the crucial portions of the endorsement, which is stated in full in a footnote to the majority opinion:

[T]his Policy is hereby extended to indemnify the Insured for the difference between the actual cash value . . . of such property . . .

and the cost . . . of replacement in a new condition, all subject to the following conditions:

1. If property damaged or destroyed . . . is not repaired, rebuilt, or replaced . . . within a reasonable time after loss or damage, this Company shall not be liable for more than the actual cash value . . . of the property destroyed.

Under the wording of this endorsement, failure to repair or replace within a reasonable time is a condition subsequent.[1] The endorsement has language indicating that the obligation is vested ("This Policy is hereby extended") followed by language indicating that the obligation may become divested upon the occurrence of a subsequent condition ("all subject to the following conditions"). The endorsement consists, then, of language that "giveth" followed by language that "taketh away" upon expiration of a period of time. This type construction, particularly use of provisos such as "but if," "provided however," or "subject to the condition that," traditionally has connoted conditions subsequent. See generally Restatement, Property § 157 (1936). Therefore, by its endorsement the insurer created a defeasible obligation that ceases only upon the expiration of a reasonable time. While research has disclosed no Texas insurance cases directly concerned with this issue, analogous language in deeds, trusts, and other instruments has been construed by Texas courts to create a condition subsequent. See, e. g., City of Dallas v. Etheridge, 152 Tex. 9, 253 S.W. 2d 640, 641–642 (1952); Stevens v. Galveston, H. & S. A. Ry., 212 S.W. 639, 643–645 (Tex. Comm'n App., 1919, jdgmt adopted).

1. Compare the endorsement in Bourazak v. North River Ins. Co., 379 F.2d 530 (7th Cir. 1967), which was described by the court as follows:

"The Extended Coverage clause provided that if the building were completely rebuilt the insurer would be liable for the repair or replacement cost, not exceeding $22,500; that the insurer would not be liable for loss 'unless and until actual repair or replacement is completed,' and that any claim for such additional liability must be made 'within 120 days after loss.'"

*Id.* at 531.

The obligation under the endorsement was subject to a second condition:

2. The total liability of the Company under this Policy for loss to property included under this endorsement shall not exceed the smallest of the following:

a. the cost to repair, or

b. the cost to rebuild or replace, all as of the date of loss, on the same site, with new materials of like size, kind and quality, or

c. the actual expenditure incurred in rebuilding, repairing or replacing on the same or another site.

As I read this provision, MFB's obligation, construed at a time when actual replacement or repair has not been made but before expiration of a reasonable time, is the smallest of "a." or "b." In this case that amount is the amount awarded by the court below.

I think the Texas trial judge's implicit acceptance of the insured's construction and his like rejection of MFB's construction was correct. But if I am in error, what is crystal clear is that there are two possible constructions. Ambiguous contracts of insurance are construed in Texas most strongly against the insurer. See 32 Tex.Jur.2d, Insurance § 60 (2d ed. 1962), and numerous cases cited therein. This requires affirmance.

Not only is the condition subsequent construction required, either as the single clear construction or as the necessary choice of an ambiguous contract, but also it comports with simple fairness. MFB's construction permits the insurer, in some circumstances, by its own act of denying coverage, to decrease the amount of its potential liability under an endorsement the purpose of which is to increase that potential liability. If the insured is not financially strong enough to effect replacement through his own resources, he does not have the benefit of the increased coverage for which he paid. One need not be clairvoyant to predict that the Texas courts will not adopt a construction giving to an insurer any such leverage over the insured and bonus for denying coverage.