**HARBOR HOUSE CONDOMINIUM ASSOCIATION and Unit 1 Corporation, Plaintiffs–Appellants,**

v.

**MASSACHUSETTS BAY INSURANCE COMPANY, Defendant–Appellee.**

No. 89–1183.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1990.

Decided Oct. 9, 1990.

Roger B. Harris, Robert K. Blain, Altheimer & Gray, Chicago, Ill., for plaintiffs-appellants.

Frederick H. Crystal, Jr., Richard D. Heytow, Douglas J. Rathe, Crystal & Heytow, Chicago, Ill., for defendant-appellee.

Before CUMMINGS and MANION, Circuit Judges, and GRANT, Senior District Judge.*

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

GRANT, Senior District Judge.

Plaintiffs brought suit against the defendant, Massachusetts Bay Insurance Co., seeking indemnification under an "all risk" insurance policy for damage allegedly sustained to a perimeter heating system by freezing temperatures.

## THE POLICY

At all times relevant, the plaintiffs were covered by a policy of insurance which insured "against *all risks* of direct physical loss" subject only to the provisions and stipulations which were set out in the policy. Under the primary provisions of the policy, the defendant's liability for covered losses was limited to the actual cash value of the damaged property. Pursuant to a "Replacement Cost Basis" endorsement Massachusetts Bay extended the indemnification agreement to cover the cost of replacement, subject to the following conditions: (1) liability would not attach *"unless and until"* the damaged or destroyed property had been *"actually repaired or replaced* by the insured with due diligence and dispatch"; and (2) total liability would not exceed the smallest of the following: (a) the applicable policy limits; (b) the cost of replacing the property with identical property; or (c) the amount actually and necessarily expended in *repairing or replacing* the property.[1] Under the terms of the

endorsement, if the plaintiffs elected not to repair or replace the damaged property, the defendant's liability was limited to actual cash value.[2]

## BACKGROUND

Plaintiffs are the owners of the common areas of a Chicago condominium building. The structure was heated partially by a perimeter heating system, which consisted of hot water pipes running along the inside of the building's exterior walls. In December 1983, freezing temperatures caused several of the pipes to freeze, crack and burst. As a result, damage occurred to both the heating system and the interior of several individual condominium units. The plaintiffs initially elected to repair the damaged property and hired Wallace, Migdal and Associates, Inc., a consulting engineering firm, to oversee the work. Wallace, Migdal and Associates, in turn, hired the Air Comfort Corporation to locate and perform the repairs. A portion of the damage to the complex and heating system was repaired at a cost of $566,000.[3] That the insurance company compensated plaintiffs for the cost of those repairs is undisputed.

Before the full extent of the damage could be located and repaired, however, the remaining sections of the system had to be isolated and pressure tested: a function which could not be completed unless malfunctioning isolation valves in the system were replaced.[4] Plaintiffs were unwilling

---

1. Paragraphs 9 and 10 of the Replacement Cost Basis endorsement to the plaintiffs' policy specifically provided:
   9. The Company shall not be liable under this endorsement for any loss unless and until the damaged or destroyed property is actually repaired or replaced by the insured with due diligence and dispatch.
   10. This Company's liability for loss on a replacement cost basis shall not exceed the smallest of the following amounts:
   (a) the amount of this policy applicable to the damaged or destroyed property;
   (b) the replacement cost of the property or any part thereof indentical (sic) with such property intended for the same occupancy and use; or
   (c) the amount actually and necessarily expended in repairing or replacing said property or any part thereof.

2. Paragraph 11 of the Replacement Cost Basis endorsement specifically provided:
   11. The insured, however, may elect not to repair or replace, in which event loss settlement shall be made on an actual cash value basis rather than on a replacement cost basis. . . .

3. This sum includes the cost of repairing both the pipes and consequential property damage in twenty-three of the 278 condominiums.

4. Isolation valves are valves installed in a piping system for maintenance purposes. When they are closed at both ends of a section of pipe, water and/or air are prevented from escaping from that section of the pipe. If the valves are

to assume the cost of replacing the valves, the additional pressure testing was never completed, and the system was abandoned. Storm windows were ultimately installed in its stead. While the plaintiffs' experts agreed that there were probably other leaks in the system, they were unable to locate any additional leaks or to determine the cause thereof.

Massachusetts Bay rejected the plaintiffs' claim for any additional damage to the perimeter heating system. The plaintiffs thereafter filed suit seeking enforcement of the insurance contract.

Following discovery, defendant Massachusetts Bay moved for summary judgment under Fed.R.Civ.P. 56. While it did not dispute the fact that there may have been additional damage to the perimeter heating system, Massachusetts Bay contended that the plaintiffs had failed to demonstrate that any additional damage was caused by an event covered under the policy, or to prove the extent or amount of their damages. It concluded, therefore, that it was entitled to judgment under either theory as a matter of law.

The district court agreed and, accordingly, granted defendant's motion. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 703 F.Supp. 1313 (N.D. Ill.1988). The court found that plaintiffs had failed to locate, and to determine the cause of, any additional damage to the system, and had thus failed to show that any additional damage was caused by a fortuitous event. *Id.* at 1318. As an alternative basis for granting summary judgment, the district court found that the plaintiffs had failed to meet their burden of proving damages.[5] *Id.* at 1321–22. This appeal followed.

---

not working properly, pressure testing of the pipes is ineffective.

5. The district court found that the plaintiffs' evidence of damages was speculative at best, and concluded that:

> [P]laintiffs' failure to locate further damage rendered repair impossible and left the record void of any competent evidence that repair

## ARGUMENT

The plaintiffs challenge the district court's findings with respect to both causation and damages. Concerning the latter, they contend that "[a]lthough there is clearly a factual dispute as to the cost of repairing the perimeter heating system ... the cost of repair is not the proper measure of damages." Plaintiffs maintain that under the Replacement Cost Basis endorsement to the insurance policy they are entitled to the actual cash value of the perimeter heating system.

Even if the cost of repair is deemed to be the proper measure of damages, plaintiffs contend that the evidence presented was sufficient to raise a triable issue of fact regarding the amount of damages. They contend that, while damage awards may not be totally speculative, they need not be exact, but rather may be based on estimates from the relevant data presented. They conclude, therefore, that it was error for the district court to grant summary judgment for the defendant.

## ANALYSIS

■ To recover under an "all risk" insurance policy, the plaintiffs must demonstrate that a loss has occurred and that that loss was caused by a fortuitous event. *Morrison Grain Co., Inc. v. Utica Mutual Ins. Co.*, 632 F.2d 424, 430 (5th Cir.1980); *Texas Eastern Transmission Corp. v. Marine Office–Appleton & Cox Corp.*, 579 F.2d 561, 564 (10th Cir.1978); *Atlantic Lines Ltd. v. American Motorists Ins. Co.*, 547 F.2d 11, 12–13 (2d Cir.1976). It is not enough to show that a loss *may* have occurred. Plaintiffs must prove the nature, extent or amount of their loss to a reasonable degree of certainty before any award of damages can be made under the policy. *S.C. Johnson & Son, Inc. v. Louisville R.*

---

was even necessary. In light of plaintiffs' failure to produce any physical evidence to support their estimate of damage, the Court holds, as a matter of law, that they fail to establish a loss to a reasonable degree of certainty.

*Harbor House Condominium Ass'n,* 703 F.Supp. at 1321.

Co., 695 F.2d 253, 261 (7th Cir.1982); *Hoefferle Truck Sales, Inc. v. Divco–Wayne Corp.*, 523 F.2d 543, 553 (7th Cir.1975); *Alover Distributors, Inc. v. Kroger Co.*, 513 F.2d 1137, 1140–41 (7th Cir.1975); *Finer Amusements, Inc. v. Citizens Ins. Co. of New Jersey*, 327 F.2d 773, 776 (7th Cir. 1964); *DMI, Inc. v. Country Mutual Ins. Co.*, 82 Ill.App.3d 113, 115, 37 Ill.Dec. 803, 805, 402 N.E.2d 805, 807 (3 Dist.1980). That the defendant did not dispute the fact that additional damage may exist somewhere in the system will not suffice to prove the amount of damages. *S.C. Johnson & Son, Inc.*, 695 F.2d at 261 (although there was some indication of damage, "the admitted fact of damage is insufficient to prove the amount of damage"); *Hoefferle Truck Sales, Inc.*, 523 F.2d at 553; *DMI, Inc.*, 402 N.E.2d at 807.

■ Although the parties devoted a great deal of their argument on appeal to the question of whether the plaintiffs had demonstrated a sufficient causal link between their purported loss and a fortuitous event, causation is an issue which we need not address. For even if we assume that the freezing temperatures may have caused additional damage to the heating system, plaintiffs have failed to provide any evidence of the extent or amount of that damage from which a jury could reasonably calculate damages. This they must do.

While it is true that the plaintiffs need not prove their damages to a mathematical certainty, neither can they rely on mere speculation or conjecture. *S.C. Johnson & Son, Inc.*, 695 F.2d at 261; *Hoefferle Truck Sales, Inc.*, 523 F.2d at 553; *Alover Distributors, Inc.*, 513 F.2d at 1140–41; *DMI, Inc.*, 402 N.E.2d at 807. The only evidence of damages submitted by the plaintiffs came from James Alwin, a licensed engineer employed by Air Comfort Corporation, and Gabriel Reisner, president of Wallace, Migdal and Associates, Inc. After reviewing that evidence in its entirety, we must concur with the district court's conclusion that any estimate of damages provided by Mr. Alwin or Mr. Reisner was speculative, based purely on conjecture,

and insufficient as a matter of law to prove the extent or amount of plaintiffs' damages.

Although Mr. Alwin and Mr. Reisner acknowledged that they had been unable to specifically locate any additional damage to the perimeter heating system, both hazarded a guess as to what it might cost to repair the additional damage which *might* be found. Mr. Alwin stated in an affidavit dated September 25, 1987 that *"if the perimeter heating system could have been pressure tested"* he believed additional leaks would have been found, and that the cost of repairing that additional damage would have exceeded the cost of repairs already completed ($75,712.16). Mr. Alwin stated during an earlier deposition in May, 1986, however, that Air Comfort would not "give a firm price estimate of a repair cost on a system that [it] couldn't quantify the costs on" without first being able to test the system. (Alwin Dep. at 105). He also stated that any estimate of cost based on the replacement cost of the system would be "grossly overestimated." (Alwin Dep. at 106).

By his own admission, Mr. Reisner's estimate of damages is based on nothing more than speculation and conjecture. Although Mr. Reisner indicated in his deposition on June 9, 1987 that the cost of repairing the system could be in the range of hundreds of thousands of dollars, he acknowledged that, without testing the system, there was no basis for estimating costs. (Reisner Dep. at 88–89).

It is undisputed that both the primary liability provisions of the plaintiffs' insurance policy and the Replacement Cost endorsement evidence a clear and unambiguous undertaking by the defendant to pay the insured the actual cash value *of the damaged property* unless the insured actually repaired or replaced the property. *See Lerer Realty Corp. v. MFB Mutual Ins. Co.*, 474 F.2d 410, 412–13 (5th Cir.1973); *National Tea Co. v. Commerce & Industry Ins. Co.*, 119 Ill.App.3d 195, 74 Ill.Dec. 704, 709, 456 N.E.2d 206, 211 (1 Dist.1983). Plaintiffs appear to suggest, however, that they are entitled to the actual cash value of

the entire heating system without proving the extent or amount of damage actually suffered, and despite their previous election to repair or replace. Such a conclusion is contrary to both the terms and provisions of the insurance contract and the law of damages. The burden was on the plaintiffs to prove the extent and amount of their damages to a reasonable degree of certainty. *S.C. Johnson & Son, Inc.,* 695 F.2d at 261; *Hoefferle Truck Sales, Inc.,* 523 F.2d at 553; *Alover Distributors, Inc.,* 513 F.2d at 1140–41; *DMI, Inc.,* 402 N.E.2d at 807. They have clearly failed to meet that burden. The plaintiffs' failure to complete the necessary pressure testing effectively precluded them from proving the existence, extent or amount of any additional damage to the perimeter heating system for which they might have been entitled to compensation under either an actual cash value basis or a replacement cost basis. By their own actions, plaintiffs are precluded from recovering any amount in excess of that already received from the insurance company for repairs actually performed.

To the extent plaintiffs suggest, in the alternative, that they were entitled to recover on a replacement cost basis, we note simply that under the terms of the Replacement Cost Basis endorsement plaintiffs must show that the repairs or replacement for which they seek compensation were actually completed. *Lerer Realty Corp.,* 474 F.2d at 413; *Higginbotham v. American Family Insurance Co.,* 143 Ill.App.3d 398, 97 Ill.Dec. 710, 712, 493 N.E.2d 373, 375 (3 Dist.1986); *National Tea Co.,* 456 N.E.2d at 211. Although partial repairs were completed and paid for by the insurance company, the pressure testing necessary to check the remainder of the system for damage was never completed. The "additional leaks" were never located, and consequently were never repaired.

## CONCLUSION

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. There is no issue of fact for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case, plaintiffs were required to offer sufficient evidence both of a fortuitous loss and of damages. We conclude, as did the district court, that the plaintiffs have clearly failed to prove the extent of the damage suffered or the amount of their damages, and that the defendant was therefore entitled to judgment as a matter of law. Accordingly, we now AFFIRM the judgment of the district court.