**OIL, CHEMICAL AND ATOMIC WORKERS INTERNATIONAL UNION, LOCAL 7–515, AFL–CIO, and Local 7–838, AFL–CIO, Plaintiffs,**

v.

**AMERICAN HOME PRODUCTS CORP. and Whitehall Laboratories, Inc., d/b/a Whitehall–Robbins, Defendants.**

**No. S91–50M.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 24, 1992.

James Balanoff, Munster, Ind., Edward Wilhoite, Chicago, Ill., for plaintiffs.

Martin W. Kus, LaPorte, Ind., for defendants.

## MEMORANDUM AND ORDER

MILLER, District Judge.

This is an action brought pursuant to the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2101 *et seq.* The cause comes before the court on cross-motions for summary judgment filed by plaintiffs Oil, Chemical and Atomic Workers International Union, Locals 7–515 and 7–838 (collectively, "OCAW"), and defendants American Home Products Corp. and its wholly-owned subsidiary, Whitehall Laboratories, Inc. (collectively "Whitehall"). This court has jurisdiction pursuant to 29 U.S.C. § 2104(a)(5).

The motions require the court to address the showing a plaintiff must make to establish that job separations were part of a plant closing, and to address the sufficiency of a notice given under the WARN Act. For the reasons that follow, the court grants the defendants' summary judgment motion because the plaintiffs have not produced evidence that pre-notice layoffs were

part of the plant closing, and the defendants' notice under the WARN Act was sufficient.

## I.

For purposes of the WARN Act, a "plant closing" is a permanent or temporary shutdown of a single site or facility within a single site of employment, if the shutdown results in employment loss for fifty or more employees, excluding part-time employees, during any thirty-day period. 29 U.S.C. § 2101(a)(2). A "mass layoff" is a reduction in force that is not the result of a plant closing, and which results in employment loss during any thirty-day period for at least thirty-three percent of the employees and at least fifty employees, excluding part-time employees, or at least 500 employees, excluding part-time employees. 29 U.S.C. § 2101(a)(3).

An employer must give sixty days' notice before an employment loss is suffered due to a plant closing or a mass layoff. 29 U.S.C. § 2102(a). This notice must go to the employees' representative or to the individual employees if there is no representative, to the state dislocated worker unit, and to the chief elected official of the unit of local government in which the plant is located. 29 U.S.C. § 2102(a). A "representative" is defined as "an exclusive representative of employees within the meaning of section 159(a) or 158(f) of this title or section 152 of Title 45." 29 U.S.C. § 2101(a)(4).

Having painted the WARN Act with broad strokes, Congress directed the Secretary of Labor to devise necessary regulations, including a description of the methods by which employers are to give WARN notices. 29 U.S.C. § 2107(a). The Secretary devised differing requirements for notices to a representative and notices to unrepresented employees. As to representatives, 20 C.F.R. § 639.7(c) provides:

Notice to each representative of the affected employees is to contain:

(1) The name and address of the employment site where the plant closing or mass layoff will occur, and the name and telephone number of a company official to contact for further information;

(2) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

(3) The expected date of the first separation and the anticipated schedule for making separations;

(4) The job titles of positions to be affected and the names of the workers currently holding affected jobs.

Written notice is to be served on the representative's chief elected officer. 20 C.F.R. § 639.6(a). The employer need not give notice to individual employees unless those employees are unrepresented. 54 Fed.Reg. 16058 (April 20, 1989).

Notices to unrepresented employees require different information:

Notice to each affected employee who does not have a representative is to be written in language understandable to the employees and is to contain:

(1) A statement as to whether the planned action is expected to be permanent or temporary and, if the entire plant is to be closed, a statement to that effect;

(2) The expected date when the plant closing or mass layoff will commence and the expected date when the individual employee will be separated;

(3) An indication whether or not bumping rights exist;

(4) The name and telephone number of a company official to contact for further information.

The notice may include additional information useful to the employees such as information on available dislocated worker assistance, and, if the planned action is expected to be temporary, the estimated duration, if known.

## II.

In 1990, Whitehall operated a manufacturing facility in Elkhart, Indiana. The parties agree that Whitehall is an "employer" within the meaning of Section 2(a)(1) of

the WARN Act, 29 U.S.C. § 2101(a)(1). At the beginning of the year, more than 775 employees worked at the facility; 505 were production and maintenance workers represented by Local 7–515 and sixty-six were laboratory workers represented by Local 7–838. Whitehall laid off fifty-six employees in February 1990; no WARN notice was given sixty days before those layoffs.

On February 26, 1990, Local 7–515 and Whitehall began collective bargaining negotiations, and specifically negotiated the rights and responsibilities of the parties in the event of a plant closing. They reached an initial agreement that Whitehall would give the union seven months' advance verbal notice of its closing, and that it would give written notice six months in advance of closing. The parties also agreed that Whitehall had exclusive authority to close the plant permanently; this topic appears to have been Whitehall's sole bargaining issue, and it was presented in an essentially non-negotiable style. By the time the parties reached a final agreement, Whitehall agreed to provide one year written notice of a plant closing, and verbal notice thirty days before the written notice.

Whitehall laid off forty-one more employees in July 1990; no WARN notice was given sixty days before those layoffs.

On October 1, 1990, Whitehall announced that it would close the Elkhart plant sometime between late 1990 and late 1991. Whitehall's announcement included an estimate that a gradual phasedown would begin in late 1990 and the plant would close by late 1991. On October 5, 1990, OCAW International's representative, Stephen Freeman, advised Whitehall to "cease and desist" from contacting the local union regarding the plant closure without the presence of a representative of OCAW International.

On November 1, 1990, Whitehall issued its written notice that the plant would be completely shut down during the last quarter of 1991. Whitehall sent a letter to Local 7–515 Vice President Don Templeton, with a copy to the International, as follows:

Dear Mr. Templeton:

Due to the phase-out of the manufacturing operations of the Whitehall Laboratories Elkhart, Indiana facility during 1991 the entire Whitehall Laboratories facility located at 1919 Superior Street, Elkhart, Indiana 46516 will be phased out by late 1991. This action is expected to be permanent.

The phase-out of the manufacturing operation of the facility is expected to commence in early 1991. Anticipated termination of members of Local 7–515 of the Oil, Chemical and Atomic Workers International Union, AFL–CIO is set forth in the attached schedule.

Enclosed is a current list of employees by classification and a tentative schedule showing the number of employees by job groupings to be terminated during each of the four calendar quarters in 1991. Terminations will be subject to bumping rights under the terms of the labor agreement and manufacturing operation adjustments.

If you need any further information with respect to the foregoing, you should contact Mr. Thomas Layman at telephone number 219–294–5651.

A separate letter to Mr. Templeton (with a copy to the International) notified OCAW of the plant closing pursuant to the collective bargaining agreement. Whitehall also sent notice to the mayor of Elkhart and the program director of the Indiana State Dislocated Workers Unit; the adequacy of those notices is not in issue.

On November 16, 1990, Whitehall permanently laid off twenty-five production workers with one week's notice. On December 31, 1990, thirteen office and clerical workers were terminated with sixty days' notice. On January 18, twenty-two workers were laid off on one week's notice. Between December 31, 1990 and January 31, 1991, Whitehall terminated twenty-one salaried employees after giving sixty days' notice.

In February and March of 1991, Whitehall recalled some of the employees terminated in November and January. On April 5, 1991, Whitehall permanently laid off seventy-one production workers with one

week's notice, including all those recalled in February and March. On May 24, 1991, Whitehall announced the layoff of thirteen laboratory workers with one week's notice.

The Elkhart Whitehall plant ceased operation on November 1, 1991.

## III.

OCAW contends that each of the layoffs recited above was in anticipation of, and thus a part of, the closing of the Elkhart plant. The 1990 layoffs (February, July, and November) were not preceded by the sixty days' notice required under the WARN Act. OCAW further contends that the November 1 written notice was deficient in several respects, making all 1991 layoffs violative of the WARN Act. OCAW seeks back pay and other lost compensation for the sixty day period in which each employee would have been able to anticipate the loss of employment had Whitehall complied with the WARN Act, less any wages or benefits actually paid to such employees during the sixty day periods. 29 U.S.C. § 2104(a)(1), (2). OCAW also seeks the costs and legal fees incurred in bringing this action. 29 U.S.C. § 2104(a)(6).

Whitehall denies that the 1990 layoffs were part of the plant closing; it contends that those layoffs resulted from reductions in production needs. Whitehall also contends that the November 1 notice was sufficient under the regulations promulgated under the WARN Act. If the notice was insufficient in any respect, Whitehall claims entitlement to the "good faith defense" provided by 29 U.S.C. § 2104(a)(4).

The parties' arguments will be categorized into those pertinent to the pre-notice layoffs, the November 1990 layoffs, and the 1991 layoffs.

## A.

■ OCAW argues that Whitehall violated the WARN Act by failing to provide sixty days' notices with respect to the lay-offs in February and July 1990 of fifty-six and forty-one employees, respectively. The WARN Act requires notice with respect to two types of events. Notice must be given of a "plant closing", which means the shutdown of a single site or facility if the shutdown causes an employment loss for fifty or more full-time employees during any thirty-day period. 29 U.S.C. § 2101(a)(2). Notice also must be given in the event of a "mass layoff", which is defined as a reduction in force that is not the result of a plant closing and results in an employment loss at a single site during any thirty-day period for either 500 or more full-time employees, or at least fifty full-time employees comprising at least a third of the full-time employees. 29 U.S.C. § 2101(a)(3).

The February and July layoffs cannot constitute a "mass layoff". The layoffs involved fewer than 500 employees and less than a third of the Whitehall work force. Therefore, if notice was required to be given, the layoffs must be shown to have been part of the plant closing. OCAW would bear the burden of so proving at trial. OCAW would not have to prove that Whitehall shut down the plant in February or July; regulations promulgated under the WARN Act contemplate that a closing may be accomplished in phases.[1]

Whitehall claims that the February and July layoffs were not part of the plant closing, but rather were caused by decreases in production needs. Whitehall submits the affidavit of plant manager Donald Boveri in support of that contention. OCAW concedes that, despite the opportunity granted pursuant to Fed.R.Civ.P. 56(f), it has no testimonial evidence to contradict Mr. Boveri's testimony that the February and July layoffs were based on production needs, but OCAW points to various documents and circumstances that it contends establish the existence of a genuine fact issue.

---

1. When all employees are not terminated on the same date, the date of the first individual termination within the statutory 30–day or 90–day period triggers the 60–day notice requirement.... The first and each subsequent group of terminees are entitled to a full 60 days' notice.
20 C.F.R. § 639.5(a)(1).

OCAW attacks Mr. Boveri's affidavit by demonstrating a poverty of information upon which his assertions were based and by showing that Mr. Boveri was not involved in the layoff decisions. OCAW also submits the findings of a National Labor Relations Board administrative law judge rejecting Whitehall's assertion that another set of layoffs (the November layoffs) were based on production needs; the ALJ found that those layoffs were based on anti-union animus.

OCAW cannot, however, foreclose summary judgment simply by asserting Mr. Boveri's lack of credibility. *Trans–Aire International, Inc. v. Northern Adhesive Co., Inc.*, 882 F.2d 1254, 1257 (7th Cir. 1989); *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir.1988). Because OCAW would bear the burden at trial of demonstrating that the February and July layoffs were part of the plant closing, it must come forth with evidence to show what facts are in actual dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If it fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990).

 A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 320 (7th Cir.1990). Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent. *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991). OCAW could not satisfy this burden at trial simply by convincing a jury that Mr. Boveri is not a credible witness.

Similarly, OCAW seeks to dismiss the deposition testimony of Whitehall officials as self-serving, but such descriptions do not contribute to the meeting of OCAW's burden to show a triable fact issue.

Materials presented by OCAW indicate that American Home Products officials began discussing the Elkhart plant's closure as early as November 1989. Discussions and planning continued from that point until the final decision was reached on September 5, 1990, when the chairman of the board approved the proposal. Time-tables were developed; consolidation plans were discussed with corporate management as early as March 1990; funds were appropriated. Whitehall Senior Vice–President Charles Slacik testified that by June 1990 Whitehall "had implemented a number of steps to occasion [the shutdown] to happen." Mr. Slacik also testified repeatedly that the final approval was not given until September, and that without that approval the closure plan could not proceed; he did not testify that reductions in force were among the steps Whitehall had implemented toward the shutdown.

The affidavit of Local 7–515 President Connie Malloy states that in January 1990 Joe Bock, American Home Products' Vice–President of Industrial Relations, told her and the president of Local 7–838 that Whitehall was considering closing the plant, and that if the union cooperated in negotiations concerning a health insurance plan, Mr. Bock would personally take an active role in looking out for the unions' interests. Further, Ms. Malloy states, during negotiations in early 1990, Whitehall proposed to eliminate a provision in the collective bargaining agreement that prohibited shutdown during the term of the contract, and insert a provision which would require one year's notice of a plant closing.

 From these circumstances, OCAW argues that an inference may be drawn that the February and July layoffs were part of a continuing march toward the plant closing. At the summary judgment stage, the court must construe the facts as favorably to the nonmoving party as the record will permit, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but only to the extent the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991). The inference

pressed by OCAW is not sufficiently reasonable to allow a trier of fact to find that the February and July layoffs were part of the plant closing. Mere planning and consideration, before a decision is made, does not support a reasonable inference that all layoffs accomplished during the planning stage were part of a closing plan not yet authorized. Such a conclusion would find basis only in speculation and conjecture, and a motion for directed verdict (or judgment as a matter of law under today's Rules of Civil Procedure) properly is granted against a party who relies only on speculation and conjecture. *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir.1992) (quoting *McClure v. Cywinski*, 686 F.2d 541, 544 (7th Cir.1982)).

OCAW has been unable to demonstrate the existence of a genuine factual dispute as to whether the February and July layoffs were part of the plant closing. Whitehall is entitled to summary judgment on the WARN Act claims concerning those layoffs.

### B.

■ Whitehall also contends that the November 1990 layoffs were ordered due to production needs unrelated to the planned plant closing; OCAW points to essentially the same evidence in support of its contention that the layoffs were part of the plant closing. Because the November layoffs were implemented after the approval and announcement of the closure plan, the court agrees with OCAW that a reasonable trier of fact could infer that the November layoffs were part of the plan and, hence, part of the plant closing. As noted above, the court must draw all reasonable inferences in favor of OCAW for purposes of Whitehall's summary judgment motion; accordingly, the court accepts, for purposes of this motion, that the November layoffs were part of the plant closing.

The WARN Act requires sixty days' notice before any job separation; the November layoffs occurred barely two weeks after notice of the intended closing. Nevertheless, Whitehall is entitled to judgment

as a matter of law with respect to any WARN Act violation arising from the November layoffs, because no employee laid off suffered an injury compensable under the WARN Act.

The Act provides a remedy for "each aggrieved employee who suffers an employment loss as a result of such closing or layoff". 29 U.S.C. § 2104(a)(1). The persons laid off in November 1990 were "aggrieved employees", because they did not receive the notice to which they were entitled. 29 U.S.C. § 2104(a)(7). Each such employee was recalled to work in February or March, 1991. Because their layoffs did not exceed six months, those laid off in November 1990, however, suffered no "employment loss". 29 U.S.C. § 2101(a)(6)(B) ("the term 'employment loss' means ... a layoff exceeding 6 months").

OCAW objects to this reasoning, noting that all those laid off in November and recalled in February and March were laid off for a final time in April. OCAW contends that the recalls were nothing more than a way to get around the WARN Act. They point to an exhibit to the Slacik deposition, which lists one of the reasons for the recalls as "Established 'temporary layoff' status for W.A.R.N. suit."[2] OCAW argues that Whitehall should not be able to get around the Act's requirements so easily.

Congress did not draft the WARN Act so as to make any employer's stumble an irrevocable fall. Nothing in the Act or accompanying regulations forbids an employer that prematurely terminated employees from recalling those employees to assure their receipt of sufficient notice. Bringing someone back to work so as to comply with the WARN Act is not evasion of the Act; it is compliance. A different result might be appropriate if employees were recalled for only a day, but each of the employees laid off in November returned to work for at least thirty days.

If the November 1 notice was sufficient—a matter addressed below—those laid off in November received sixty days'

**2.** This suit was filed on February 7, 1991.

notice of the plant closing before their "employment loss" commenced in April. Because those laid off in November did not suffer any employment loss, their layoffs establish no right to a remedy under the WARN Act. No factual disputes affect that conclusion; hence, the remaining factual disputes are immaterial and do not foreclose summary judgment. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir.1989). Whitehall is entitled to summary judgment on this WARN Act claim.

### C.

All layoffs and job separations in 1991 occurred more than sixty days after the November 1 notice. Accordingly, if the November 1 notice was adequate, those job separations cannot be held to have violated the WARN Act. OCAW contends that the November 1 notice was deficient in five different ways.

### 1.

■ Whitehall addressed the November 1 notice to the vice-president of Local 7–515, Don Templeton, rather than to the local's president, Connie Malloy.[3] OCAW accurately notes that Whitehall was required to serve the notice upon Ms. Malloy. 20 C.F.R. § 639.6(a). Regardless of the person to whom the notice was addressed, however, undisputed evidence in the record establishes that Ms. Malloy also was given a copy of the notice on November 1. Indeed, Whitehall's conduct with respect to Ms. Malloy's comments that day led to the National Labor Relations Board findings discussed above.

Any reasonable method of delivery of the notice is sufficient under 20 C.F.R. § 639.8. Ms. Malloy received the notice. Whitehall is entitled to judgment as a matter of law on this claim.

### 2.

■ The November 1 notice provided that terminated employees would be subject to recall due to manufacturing adjustments. OCAW contends that this provision rendered the WARN notice illusory, be-

cause affected employees could not determine when their employment opportunities with Whitehall finally would come to a close. Accordingly, OCAW argues, employees could not receive the transition time that the WARN Act was intended to provide:

> *Purpose of WARN.* The [WARN Act] provides protection to workers, their families and communities by requiring employers to provide notification 60 calendar days in advance of plant closings and mass layoffs. Advance notice provides workers and their families some transition time to adjust to the prospective loss of employment, to seek and obtain alternative jobs and, if necessary, to enter skill training or retraining that will allow these workers to successfully compete in the job market.

20 C.F.R. § 639.1. Thus, for example, when Whitehall laid off twenty-two employees in January 1991, OCAW contends those employees were "in limbo" due to the possibility of recall.

Whitehall raises two arguments that, for reasons discussed below, the court cannot rely upon at the summary judgment stage. First, it contends that the collective bargaining agreement left it with no alternative other than layoff subject to recall; the collective bargaining agreement contained no provision for terminations. Second, it maintains that placing the employees on layoff status subject to recall worked to the advantage of the affected employees, who retained their health benefits for four months while on layoff, continued to accrue seniority rights, and retained a guaranteed right of recall.

OCAW declined to agree with the proposition that the collective bargaining agreement provided no alternative, and the collective bargaining agreement does not appear to be in the record before the court. In any event, OCAW is correct that the collective bargaining agreement could not trump the WARN Act; if the WARN Act requires out-and-out terminations, layoffs subject to recall would be impermissible.

**3.** Ms. Malloy was on layoff status with Whitehall on November 1, 1990. Whitehall apparently addressed the notice to the highest-ranking union official not on layoff status.

As to the second point, OCAW notes that the benefits were not afforded employees until OCAW filed a grievance; again, however, the collective bargaining agreement cannot preempt the WARN Act.

Nonetheless, the court finds nothing in the Act or the regulations that forbids an employer from laying off employees subject to recall after issuing a WARN Act notice. The right of recall may be the employer's obligation, but it is the employee's right and opportunity. The court is not persuaded that Congress intended to strip employees of that right and opportunity by requiring that all post-announcement job severances be permanent.

OCAW argues that, as a practical matter, the possibility of recall to high-paying Whitehall jobs precluded progress to the "transition time" following layoff. In the final analysis, however, the choice—to the extent the prevailing local economy allowed a choice—remained with the laid-off employee. That employee could seek or accept other employment (if available) or retraining, or could await recall. The court does not believe that the WARN Act was intended to foreclose that choice if circumstances, or a collective bargaining agreement, permitted the employee to have such a choice.

Whitehall is entitled to judgment as a matter of law on this claim.

### 3.

■ The November 1 notice stated that terminations would be subject to "bumping rights". OCAW maintains that this information was too limited to allow it or affected employees to ascertain which employees would be terminated at any given time. Explanation of the complicated "cross bumping" system in effect under the collective bargaining agreement is required.

The collective bargaining agreement's bumping procedure allowed employees to use their seniority to bump other employees in the same or lower pay grade, and also allowed "cross bumping" into another job group by a qualified employee. To be eligible for "cross bumping", however, an employee must have signed a paper with Whitehall's personnel department. In practice, however, such requests were not made until an employee was faced with layoff from the plant, and an employee who sought to "cross bump" could wait until the date of the layoff to sign the paper with the personnel department.

A list of affected employees, together with their seniority dates, accompanied the November 1 notice. Accordingly, OCAW could determine bumping rights within a job group, but because OCAW did not have information concerning the "cross bumping" papers in Whitehall's personnel department, OCAW could not evaluate the effect of "cross bumping" rights between job groups. OCAW maintains that the failure to provide such information with the November 1 notice renders the notice ineffective under the WARN Act.

As noted above, the Act contains no requirements for the content of a notice; Congress referred the task of developing such requirements to the Secretary of Labor. Accordingly, the regulations must provide the informational rights asserted by OCAW for the claim to survive. The court can find no such informational right.

As a preliminary matter, it does not appear to the court that the regulations create any obligation for the employer to provide a representative with any information concerning bumping rights. 20 C.F.R. § 639.7(d) requires that an unrepresented employee be given "[a]n indication whether or not bumping rights exist", but § 639.7(c), which governs the content of notice to a representative, contains no such requirement. Nevertheless, because this is a ground not raised by any party,[4] the court does not rely upon it. *See Edwards v. Honeywell, Inc.,* 960 F.2d 673 (7th Cir. 1992).

Assuming that an employer must provide a representative with information about

---

**4.** The court raised the issue at the hearing on the motion, and OCAW's counsel stated a belief that such a requirement is to be found elsewhere in the regulations. Understandably, since this was not an issue raised before the hearing, counsel could not identify that regulation.

bumping rights, the court can find no basis for holding that a failure to give all pertinent information constitutes a WARN Act violation. As noted above, 20 C.F.R. § 639.7(d) requires only that unrepresented employees be told whether bumping rights exist; no provision requires the employer to detail those rights. 20 C.F.R. § 639.6(b) says notice should be given to employees likely to lose their jobs as others exercise their bumping rights, but only to the extent such workers can be identified when the notice is given; if they cannot be identified, notice to the incumbents suffices.

This is not an instance in which an employer refused to provide necessary information upon the representative's request, making it impossible for the representative to advise employees. A different result might be warranted under such circumstances. Whitehall's November 1 notice, however, offered to provide additional information upon request, and nothing in the record before the court suggests that such a request was made.

Whitehall is entitled to judgment as a matter of law on this claim.

### 4.

■ OCAW next argues that the November 1 notice contained inadequate job title listings. 20 C.F.R. § 639.7(c)(4) requires notice to a representative to contain, "The job titles of positions to be affected and the names of the workers currently holding affected jobs." OCAW contends that the job title listings failed in two particulars.

First, OCAW notes that while Whitehall admitted to having 507 employees at the beginning of 1990, the November 1 notice listed only about 400 employees. Accordingly, OCAW reasons, the listing must have been incomplete. This argument has no merit; the record supports Whitehall's explanation that the principal listing contained the names of OCAW members who were actively employed, and a separate listing was provided of those on layoff status. By November 1, the number of actively employed OCAW members had dropped from 507 at the beginning of 1990 to the approximately 400 listed in the notice. As noted above, OCAW challenges the layoffs

of ninety-seven such employees in February and July.

Second, the listing specified employees specifically by job classification. The schedule of separations attached to the notice referred to job groupings. At Whitehall, a job grouping consisted of several job classifications. Accordingly, OCAW argues, it was impossible for OCAW to determine the schedule for termination of job classifications.

A review of the notice and its attachments leads the court to conclude that the extensive listings in those attachments comply with the WARN Act and the regulations. While the use of uniform terminology would have been helpful, the combination in this notice was not so indecipherable as to amount to a violation of the WARN Act or its regulations. Again, the court notes the notice's offer of additional information upon request and the absence of any indication in this record of such a request.

Whitehall is entitled to judgment as a matter of law on this claim.

### 5.

Finally, OCAW contends that the November 1 notice failed to specify the expected separation dates. Whitehall contends that the notice was sufficient, but argues alternatively that if the notice was insufficient, it is entitled to the "good faith" defense provided by 29 U.S.C. § 2104(a)(4). The court agrees with OCAW's principal argument, but also agrees with Whitehall's alternative argument.

### a.

■ The November 1 notice provided a schedule for the separation of OCAW members by job groupings, with the projected number of employees in each job grouping to be laid off in each of the quarters of 1991. Whitehall contends that this notice satisfies the WARN Act. The court disagrees. 20 C.F.R. § 639.7(c)(3) requires the employer to notify the representative of the "expected date of the first separation and the anticipated schedule for making separations". 20 C.F.R. § 639.7(b) provides:

As used in this section, the term "date" refers to a specific date or to a 14–day period which a separation or separations are expected to occur. If separations are planned according to a schedule, the schedule should indicate the specific dates on which or the beginning date of each 14–day period during which any separations are expected to occur. Where a 14–day period is used, notice must be given at least 60 days in advance of the first day of the period.

The court agrees with OCAW that these provisions entitle a worker, through his or her representative, to two things: (i) identification of, at most, the fourteen-day period in which the employee will be separated from the employer, and (ii) notice of the separation at least sixty days before that fourteen-day period begins. Whitehall provided the latter, but not the former. The most a worker could glean from the November 1 notice was that his or her job would be terminated sometime within an identifiable ninety-day period.

20 C.F.R. § 639.7(b) only requires an employer to provide the best information available to it when the notice is given, and Whitehall contends that it provided its best information. Because the collective bargaining agreement required that notice of the plant closing be given a year in advance, as distinct from the sixty days required by the WARN Act, the November 1 notice necessarily was drafted with greater uncertainty than the usual WARN notice. The court accepts the logic behind the proposition that it is more difficult to assign a specific date to a layoff expected to occur in nine months than one sure to occur within a few weeks.

The regulations, however, do not require a worker to swap knowledge of his or her separation date (or separation fortnight) for greater foreknowledge that the worksite will be closed. One who wishes to keep a higher-paying job at the closing plant before beginning a lower-paying job, but who also wishes to avoid an intervening period of unemployment, needs to know when his or her job will end, so a starting date at the person's next job can be select-

ed; the regulations require that the worker be given that information.

Accordingly, an employer with insufficient information to comply with § 639.7(b) and (c)(3) at the time notice is given must give the best information it has, § 639.-7(a)(4), and then provide further notice to workers at least sixty days before their separation, setting forth the date on (or fourteen-day window in) which the separation will occur. 20 C.F.R. § 639.7(a)(2); *UAW v. Shadyside Stamping Corp.*, 947 F.2d 946, 6 I.E.R. Cases 1640, 1645–1646 (S.D.Ohio), *aff'd in unpublished op.*, 6 I.E.R. Cases 1648 (6th Cir.1991). Whitehall did the first; it did not do the second. Instead, workers were provided with seven days' notice of their actual separation date. That notice was insufficient to satisfy Whitehall's obligation under the Act and the regulations.

### b.

■ Section 5(a)(4) of the WARN Act provides that if an employer proves to the court's satisfaction that its violation of the WARN Act was in good faith and that the employer had reasonable grounds for believing its conduct was not a violation, the court has discretion to reduce the amount of the liability or penalty provided by the WARN Act. 29 U.S.C. § 2104(a)(4). Whitehall contends that if it is found to have violated the WARN Act, as the court just found, it is entitled to the benefit of this provision. The court agrees.

The court is hesitant to rule on an issue of good faith at the summary judgment stage. Good faith is a variant of intent, and summary judgment on issues of intent is rare, but not wholly non-existent. *See, e.g., Holland v. Jefferson Nat'l Life Ins. Co.*, 883 F.2d 1307 (7th Cir.1989); *McMillian v. Svetanoff*, 878 F.2d 186 (7th Cir. 1989); *Corrugated Paper Products, Inc. v. Longview Fibre Co.*, 868 F.2d 908, 914 (7th Cir.1989). Whitehall cites *UAW v. Shadyside Stamping Corp.*, 6 I.E.R. Cases at 1646–1648, as authority for the proposition that summary judgment may be appropriate on issues under Section 4(a)(4) of the WARN Act. Although the court recognizes that it is not bound by opinions of

other district courts, *see Colby v. J.C. Penney Co.*, 811 F.2d 1119 (7th Cir.1987), the court finds the reasoning of the *Shadyside Stamping* court persuasive. A Section 4(a)(4) defense may be considered at the summary judgment stage in an appropriate case.

This is such a case. OCAW points to evidence of bad faith or hard feelings on Whitehall's part, and argues that such evidence precludes a finding of good faith. Under Section 4(a)(4), however, the court must focus on Whitehall's efforts to comply with the WARN Act, not upon conduct unrelated to the notice required by that Act. The record before the court demonstrates that Whitehall did nothing to attempt to skirt its obligations under the WARN Act.

The possibility of the plant's closing was made known to OCAW officials in February 1990. Indeed, OCAW may have known of the possibility before higher-ups at Whitehall's corporate parent; Mr. Slacik's deposition testimony indicates that the possibility was first presented to corporate management in March 1990. Verbal notice of the closing decision was given within weeks of its final approval. The closing of the plant was announced a year in advance, and some workers learned of the quarter in which they would lose their jobs much more than sixty days in advance. Workers laid off too soon were rehired to avoid violation of the Act. Failure to have done some of these things would have violated the collective bargaining agreement, but the collective bargaining agreement was agreed upon well after the WARN Act went into effect. The WARN Act was enacted to let employees know if their worksite was going to be closed; there simply was no secret in 1991 that the Elkhart Whitehall plant would close near the end of the year.

In addition to good faith, an employer also must demonstrate that it had reasonable grounds for believing that its conduct was not a WARN Act violation. *Jones v. Kayser–Roth Hosiery, Inc.*, 748 F.Supp. 1276, 1291 (E.D.Tenn.1990). This case differs from *Shadyside Stamping*, in which some notice was given before the WARN Act took effect and other notice was given before the regulations had been finalized. It also differs, however, from *Kayser–Roth Hosiery*, in which the regulations were clear. The requirement of repeated notices is not found in any single place in the regulations: § 639.7(c) tells the employer it must notify a representative of the expected date of the first separation, but need only present an anticipated schedule of later separations (in contrast to § 639.7(d), which requires that an unrepresented worker be told the expected date when he or she will be separated); § 639.7(b) sets forth the worker's right to know the date or fortnight of separation; § 639.7(a)(4) tells the employer it need only include the best information available at the time of the notice, but § 639.7(a)(2) says that if more information becomes available after early notice has been given, the employer should issue a further notice containing any further required information.[5]

More important than the maze through which the employer must run, however, is that the obligation is unclear even at the finish line. Section 639.7(a)(2), which contains the only regulatory requirement of successive notification, applies only to "the required elements set out in this section"; section 639.7(b), which addresses the specificity of notice of the date of separation, says that, "If separations are planned according to a schedule, the schedule should indicate...." In light of the use of the nonmandatory "should", a reasonable person reading these two regulations could conclude that while successive notifications

---

**5.** At argument on these motions, counsel for OCAW argued that the filing of this suit put Whitehall on notice about this insufficiency, precluding any reasonable basis for believing its conduct sufficient. The complaint filed on February 7, 1991 did not, however, refer to the fourteen-day window requirement of § 639.7(b). Indeed, it alleged that Whitehall only told employees that they might be let go any time in 1991, and cited only 20 C.F.R. § 639.7. It would not have been unreasonable for Whitehall to have read the initial complaint, recognized the error in the factual allegation, and not to have identified the path through § 639.7 through which OCAW has led the court.

must be given for information required to be given, specific dates or fortnights are not required to be given if separations are planned according to a schedule.

This court's reading differs, as did the *Shadyside Stamping* court's reading. Nonetheless, the Act is silent on successive notification, and the regulations are ambiguous. Accordingly, the court concludes that Whitehall has demonstrated its entitlement to the defense provided by Section 4(a)(4) of the WARN Act.

c.

The combination of the lack of specific separation dates in Whitehall's November 1 notice and Whitehall's failure to provide subsequent notice of separation dates at least sixty days before separation violated 20 C.F.R. § 639.7. Whitehall has, however, demonstrated its entitlement to the "good faith" defense provided by 29 U.S.C. § 2104(a)(4). Accordingly, Whitehall is entitled to judgment as a matter of law on this claim.

IV.

For the foregoing reasons, the court now DENIES the plaintiffs' motion for partial summary judgment and GRANTS the defendants' motion for summary judgment. Judgment shall be entered for the defendants.

SO ORDERED.